954

## LOUGHNEY v. TEXAS CITY NAT. BANK.

No. 12451.

Court of Civil Appeals of Texas.
Galveston.

Oct. 23, 1952.

Rehearing Denied Dec. 4, 1952.

Godard & Dazey and William B. Dazey, of Texas City, for appellant.

Wigley, McLeod, Mills & Shirley and Robert W. Alexander, of Galveston, for appellee.

CODY, Justice.

This is an appeal by appellant, J. T. Loughney, against the action of the trial court, in withdrawing the case from the jury upon appellee Bank's motion, and in rendering judgment, jointly and severally, against J. T. Loughney and his co-defendant, George Ehrenfried, for an amount in excess of $4,000, being the amount alleged to be due appellee upon a promissory note, principal, interest and attorney's fees.

On October 2, 1947, appellant, J. T. Loughney, and his wife, and George Ehrenfried, and his wife, executed and delivered their promissory note, in the principal sum of $3,500, bearing interest at the rate of 5% per annum, payable to the order of the Bank in 90 days. There were certain payments made thereafter, and certain extensions and renewals thereafter, not in dispute, and not important here. Ehrenfried and his wife did not answer to the suit. The judgment was, as stated above, against the defaulting George Ehrenfried and J. T. Loughney. Their wives were found not to be liable.

Suit was filed by the Bank on May 25, 1951. Defendants J. T. Loughney and wife answered, admitting the execution of the note sued on. At this point we digress in order to state certain undisputed facts, which it is necessary to have in mind in order that the answer of the defendants Loughney may be understood. George Ehrenfried, prior to the execution of the note sued on, was engaged in operation of a restaurant in Texas City. The business was conducted in a building located on a lot belonging to C. O. Amburn, and Ehrenfried had a lease contract from Amburn which, among other things, obligated him to pay rentals of $90 per month. For purposes of simplification, it will be stated that the lease by its terms ran until the year 1956.

Appellant Loughney, who apparently was not a restaurant man, became interested

with Ehrenfried in the business. They and their wives executed the aforesaid note, and secured its payment by a chattel mortgage on the fixtures, etc., in the restaurant and further secured same by an assignment of the aforesaid lease by Ehrenfried to the Bank. The business did not prosper. Ehrenfried, who apparently was not solvent, apparently just walked away from the business sometime in the summer of 1948. Loughney tried to get someone who understood running a restaurant to take over the business, and apparently tried to get the Bank to foreclose its chattel mortgage, and its mortgage on the lease. The obligations under the lease were apparently not attractive. The prospects whom Loughney succeeded in interesting in the business either were not able, or were unwilling to pay the indebtedness which was due the Bank, and the Bank refused to sign any agreement that it would not act to foreclose. That is, would not give an agreement not to disturb a sublessee who might take over the business. On the 10th day of December, 1948, Ehrenfried formally transferred the business, and the personal property used in connection with it, and the lease aforesaid, to Loughney, subject to the outstanding indebtedness, including the aforesaid indebtedness of $3,500, due the Bank. Indorsed upon the face of said transfer to Loughney were the following words: "Approved: Texas City National Bank by H. M. Dansby, V. P."

On the following day, December 11, 1948, Loughney sublet the property to Roy Lucus, including the building, and the equipment, upon the consideration of $780 (which was three months' rent at the rate of $260 per month), and thereafter, on February 11, 1949, Lucus was to pay $260 per month to J. T. Loughney at the Bank, until all of the debts listed therein, including the aforesaid note of $3,500, was paid off, at which time Loughney was bound to transfer all of his interest to Lucus. Loughney retained the privilege of showing the property to prospective purchasers, with a prior right in Lucus to buy. Lucus didn't stay with the business except for some three or four months.

Thereafter, on June 23, 1950, the Bank and the owner of the property in which the business was being, or had been, conducted, entered into a written agreement reciting that there was a bona fide dispute as to the Bank being liable for the rentals on the property, and as to the priority of liens. And in said agreement, Amburn released the Bank from liability, and the Bank in effect quitclaimed any interest it had in the property or the equipment by reason of the aforesaid chattel mortgage, and the assignment of the lease contract to secure the payment of the $3,500 note.

Subjoined to the aforesaid agreement was a written request by Loughney to the Bank to release its interest in the chattels located in Amburn's property.

Thereafter, Loughney transferred all of his interest to Amburn in the property, business, etc., in consideration of release from the obligations of the lease, and the cancellation of the balance of the past-due rentals.

We now return to a statement of the answer and cross-action filed by Loughney and wife, to the suit of the Bank on the note. The substance of the foregoing facts was plead, and it was the theory of the answer and cross-action that the Bank by its various acts had converted the security which it had taken in connection with the indebtedness of $3,500, sued on. By a supplemental petition, the Bank alleged that it had never had possession of the goods, chattels and leasehold, and "has never, and does not now," look to said cafe premises for satisfaction of all or any part of the debt. During the trial, appellant filed a trial amendment, alleging that the Bank had actual possession, or at least constructive possession of the property, or at least exercised such dominion and control over the leasehold and chattels as to constitute conversion in law. Aside from the abstract point, stating correctly the rule as to how the evidence must be viewed in cases which have been withdrawn from consideration of the jury, appellant has predicated his appeal upon three points.

Appellant's first point is: "Where mortgagee denies having at any time looked to the security of a note for satisfaction, and denies in any manner interfering with or

controlling the mortgaged property, it is equivalent to a disclaimer, and any act of dominion or ownership, by mortgagee, which are inconsistent with the rights of the owner is a conversion for which the mortgagee is liable to mortgagor."

The rule is well settled in this State that the holder of a secured note may sue and recover personal judgment against the maker of a note without resorting to the collateral security. Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380, 382. Having such legal right the holder of such secured note may, with full knowledge that he is not going to resort to such security, fail to release same. See Harper v. First State Bank of Grand Prairie, Tex.Civ.App., 3 S.W.2d 552, writ refused, and authorities there cited. Since the Bank here had the legal rights conferred upon it by the chattel mortgage, its failure to release same was no legal wrong. There is no claim here by appellant that he had a purchaser who was ready, able and willing to purchase the cafe, and its equipment, subject to the Bank's secured indebtedness, and that the Bank asserted some claim over and above its lien, and thereby prevented the consummation of the sale. By standing upon its legal rights, the Bank could not be guilty of a legal wrong. We overrule the point.

What has just been said disposes of appellant's next point, which reads: "A mortgagee, having control of the sale and disposition of the mortgaged property under the terms of the mortgage instruments, is a trustee for all parties and, where the evidence shows that the sum due on the note is in excess of the value of the security, that the value of the security is depreciating monthly due to a superior lien of a landlord, and that the mortgagor is unable to pay the amount due on the mortgage note, the mortgagee should not be permitted to refuse to sell, or consent to a sale of such security at the request of the mortgagor and is liable as for conversion if mortgagor sustains a loss thereafter." The holder of a mortgage cannot render himself liable in damages by standing firmly upon the rights given him by the terms of the mortgage.

Appellant's final point reads: "Where evidence is in conflict as to whether or not a mortgage took such actual or constructive possession of a leasehold and chattels securing its note, or exercised such control and dominion over them, to the exclusion of the same right by the mortgagor or owner, as to amount in law to a conversion, a fact question is presented for jury determination and the trial court erred in failing to submit such question to the jury for findings thereon."

There was no evidence before the jury which would have authorized findings to the effect: (1) That the sublease to Roy Lucus was made at the instance of the Bank, (2) or was drawn by its attorney. When the cafe was unoccupied the keys were at times left at the Bank at the direction of appellant for his convenience, that prospective purchasers might pick same up there and go view the cafe premises,—the same not being located far from appellee's banking house, and at a greater distance from where appellant was employed. The sublease was made with the consent of Amburn, and under its terms the rental payments from Lucus of $260 per month were to be made for application as therein provided. Amburn reached the conclusion that he could hold the bank for the rentals due him as owner of the cafe building. This claim was settled as indicated above, and settled in conformity with the request of appellant.

Without further elaboration, there is no evidence in the record which raised the issues which are the subject matter of the point under consideration.

The court correctly withdrew the case from the jury and rendered judgment for appellee against appellant.

Judgment affirmed.